RENDERED:  DECEMBER 17, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0361-MR

TRAVIS DYKES                                                                APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.      HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 20-CI-01547

OWNERS INSURANCE COMPANY                                          APPELLEE

OPINION
VACATING AND
REMANDING

** ** ** ** **

BEFORE:  COMBS, DIXON, AND MAZE, JUDGES.

COMBS, JUDGE:  Travis Dykes (Appellant) appeals a judgment of the Fayette

Circuit Court holding that the commercial automobile insurance policy issued by

Owners Insurance Company (Appellee) did not provide underinsured motorist

coverage to Dykes for a motor vehicle accident that occurred while he was driving

his personal pick-up truck.  After our review, we vacate and remand.

On April 1, 2019, Dykes was involved in a two-car accident with Logan Hauswirth on Man O' War Boulevard in Lexington. Dykes was driving a 2016 Ford F-250 pick-up truck insured by State Farm Insurance under a personal automobile liability policy. Hauswirth's vehicle was insured by Progressive.

Hauswirth's policy limits were insufficient to cover Dyke's alleged damages; Progressive tendered the limits of its policy. On January 7, 2020, Dykes filed a claim for underinsured motorist coverage under the commercial auto policy issued by Owners Insurance. This policy designates the named insured as follows:

> TRAVIS DYKES
> T & C BOBCAT SERVICE

The entity insured is characterized on the policy declarations page as an "individual." Pursuant to a policy endorsement, Dykes paid an additional premium for uninsured/underinsured motorist coverage.

Through correspondence dated May 19, 2020, Owners Insurance denied the claim. Describing its insured as "Travis Dykes dba T&C Excavating LLC," Owners Insurance contended that underinsured motorist coverage was available only for an accident in a vehicle which had been scheduled in the policy declarations. It stated that coverage did not extend to the 2016 Ford F-250 pick-up truck that Dykes was driving at the time of the accident.

On May 22, 2020, Dykes filed a personal injury action against Hauswirth in Fayette Circuit Court. Dykes alleged that Hauswirth was an

underinsured motorist pursuant to the provisions of KRS[1] 304.39-320, and that Owners Insurance was obligated to pay damages in excess of the coverage afforded by Hauswirth's policy with Progressive. Dykes contended that Owners Insurance breached its contract with him by failing to provide underinsured motorist benefits; that it acted in bad faith by denying his claim; and that it violated Kentucky's Unfair Claims Settlement Practices Act (UCSPA) in numerous ways. KRS 304.12-010, *et seq.*

Owners Insurance answered and denied the allegations. It requested a declaratory judgment with respect to its obligation to provide underinsured motorist coverage.

On January 29, 2021, Dykes filed a motion for judgment. He argued that the policy provides coverage or, in the alternative, that the policy provisions are ambiguous. Owners Insurance responded and filed a cross-motion for judgment. It argued that the commercial auto policy was issued to Dykes's business for the purpose of covering his work vehicles and that its provisions clearly extended underinsured motorist coverage **only** to those scheduled vehicles for which a premium was paid.

---

[1] Kentucky Revised Statutes.

The circuit court entered judgment on March 1, 2021, and concluded that Dykes was not entitled to underinsured motorist coverage pursuant to the terms of his policy. This appeal followed.

On appeal, Dykes argues that the trial court misinterpreted the policy's provisions. Because the construction of an insurance contract is a matter of law, we review the issue *de novo* and without deference to the trial court's conclusions. *Isaacs v. Sentinal Ins. Co. Ltd.*, 607 S.W.3d 678 (Ky. 2020). We begin our analysis by examining the pertinent language of the insurance policy and the relevant endorsement.

Again, Item One of the policy identifies the named insured as follows:

> TRAVIS DYKES
> T & C BOBCAT SERVICE

It specifically identifies the insured entity as an "Individual." By insertion of a symbol beside "Uninsured/Underinsured Motorist Coverage," Item Two of the policy indicates that coverage is provided only for "scheduled autos." Item Three includes a "schedule of covered autos," identifying a 1996 International 8100 heavy-duty truck and a 1978 Flatbed Trailer. A separate chart sets forth the applicable coverage (specifically including uninsured and underinsured motorist coverage for the heavy-duty truck), coverage limits, and premiums for each scheduled vehicle. Critically, Item Three also provides for "Additional Coverages and Endorsements." It contains a separate chart -- which precedes the charts

-4-

pertaining to the scheduled autos -- that separate chart describes the limits and premiums for uninsured and underinsured motorist coverage without reference to either of the scheduled autos.

Owners Insurance contends that Dykes did not enter into a contract for underinsured motorist coverage for his 2016 Ford F-250 pick-up truck. It states that the Ford F-250 pick-up "was not scheduled, listed, referenced, nor insured under the Owners Commercial Auto Policy at issue in this matter." It notes that "no premium was paid to [Owners Insurance] for that vehicle." While these assertions are facially correct, the argument overlooks the pertinent fact that Dykes also purchased and paid a separate premium for the several endorsements referenced in Item Three.

One of these endorsements provides for additional underinsured motorist coverage. It expressly provides that "THIS ENDORSEMENT CHANGES THE POLICY."

The Underinsured Motorist Coverage endorsement specifically provides that Owners Insurance will "pay all sums the **insured** is legally entitled to recover as compensatory damages from the owner or driver of an **underinsured motor vehicle**." With respect to who qualifies as an *insured*, the endorsement provides as follows:

If the Named Insured is designated in the Declarations as:

1.  An individual, then the following are **insureds**:
    a. The Named insured and any **family members**.
    b. Anyone else **occupying**:
       (1) A covered **auto**; or
       (2) A temporary substitute for a covered **auto**. . . .

2. A partnership, limited liability company corporation or any other form of organization, then anyone **occupying**:
    a. A covered **auto** is an insured; or
    b. A temporary substitute for a covered **auto** is an **insured**.

(Emphases added.)  In its policy declarations, Owners Insurance unambiguously designated the named insured, "TRAVIS DYKES T & C BOBCAT SERVICE," an individual and a sole proprietorship, as an "individual."  Therefore, by the plain terms of its endorsement, Dykes is an "insured" even where he is not occupying a "covered auto."  As a consequence, and by the unambiguous language of the contract terms, Owners Insurance is obligated to pay all sums that he is legally entitled to recover as compensatory damages from the driver of an underinsured motor vehicle.

Owners Insurance rejects this interpretation.  It argues that the underinsured motorist coverage endorsement does not modify the commercial auto policy to provide coverage for the Ford F-250 pick-up because the Ford F-250 was not a "scheduled auto."  It relies on the endorsement's preamble, which indicates as follows:

-6-

For a covered auto licensed or principally garaged in Kentucky, this endorsement modifies insurance provided under the following: COMMERCIAL AUTO POLICY.

From this language, Owners Insurance concludes that a vehicle that is not a "scheduled auto" is not a "covered auto" under the policy and that the endorsement -- by its very terms -- does not apply. We disagree.

Section V of the policy provides that:

For any covered **auto** that is scheduled in the Declarations, this policy provides a primary insurance. *For any covered **auto** which is not scheduled in the Declarations*, the insurance provided by this policy is excess over any other collectible insurance.

(Italics added.) The policy itself accounts for a vehicle that is not a "scheduled auto" yet is classified as a "covered auto." Therefore, we cannot accept the premise asserted by Owners Insurance that is clearly refuted by this language.

Furthermore, the policy endorsement amending the provisions of "**SECTION V-CONDITIONS**" of the policy specifically envisages uninsured motorist coverage -- even where a vehicle owned by the name insured is not a "covered auto." It provides as follows:

1. The **Other Insurance** provision in the policy is changed by addition of the following:

    a. The reference to "other collectible insurance" applies only to other collectible underinsured motorist insurance.
    b. *Any insurance **we** provide with respect to a vehicle owned by the Named Insured . . . that is not a covered*

-7-

> ***auto*** *for Underinsured Motorist Coverage under this policy, will be excess over any other collectible underinsured motorist insurance providing coverage on a primary basis.*

(Italics added.) Thus, Owners Insurance contemplated coverage to a named insured's vehicle even where it is not an auto covered under the policy.

As Owners Insurance correctly observes, the parties are largely at liberty to contract for the terms of a policy that best suit them. *True v. Raines*, 99 S.W.3d 439 (Ky. 2003). Moreover, "Kentucky public policy does not bar reasonable [underinsured motorists coverage] exclusion provisions." *Philadelphia Indem. Ins. Co. v. Tryon*, 502 S.W.3d 585, 592 (Ky. 2016). However, we are not persuaded that the policy includes a clear and unambiguous statement indicating that it does not pay uninsured motorist coverage benefits for vehicles it does not insure. *See Philadelphia Indem. Ins. Co.*, *supra.* On the contrary, we are persuaded that the Owners Insurance policy explicitly defines Dykes as an insured for underinsured motorist coverage regardless of which vehicle he occupied. Where the terms of an insurance policy are unambiguous, the policy will be enforced as written. *Kemper Nat'l Ins. Companies v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869 (Ky. 2002).

Having concluded that Owners Insurance is obligated to provide underinsured motorist coverage to Dykes, we are compelled to vacate the judgment of the Fayette Circuit Court. We remand the matter for additional proceedings,

including its consideration of any allegations raised with respect to bad faith and UCSPA.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Kellie M. Collins
Taylor M. Shepherd
Lexington, Kentucky

BRIEF FOR APPELLEE:

David K. Barnes
Matthew R. Londergan
Louisville, Kentucky